IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS A. MARTIN; BRENDA L. MARTIN, ) ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 15-471 |
| vs. ) | Chief Magistrate Judge Maureen P. Kelly |
| ) | |
| GEORGE JUNIOR REPUBLIC IN ) PENNSYLVANIA; GEORGE JUNIOR ) REPUBLIC, ) | Re: ECF No. 6 |
| Defendants. ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiffs Douglas A. Martin and Brenda L. Martin (collectively, "Plaintiffs") have brought this action against their former employers, Defendants George Junior Republic in Pennsylvania and George Junior Republic (collectively, "Defendants"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, by failing to pay Plaintiffs a minimum wage and/or overtime pay which, amongst other things, led to Brenda Martin resigning her position and Douglas Martin's termination.

Presently before the Court is a partial Motion to Dismiss filed by Defendants. ECF No. 6. For the following reasons, the Motion to Dismiss will be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Defendants operate a private, not for profit residential treatment facility for delinquent boys in Grove City, Mercer County, Pennsylvania. ECF No. 1, ¶ 5. Plaintiffs are a married couple who were hired by Defendants in January 2007 as counselor parents. Id. at ¶¶ 4, 11. Plaintiffs' primary duties were to supervise delinquent boys assigned to

the cottage in which Plaintiffs resided, at no cost to them, at Defendants' facility. Id. at ¶¶ 12-13, 15.

It is undisputed that Plaintiffs were at-will employees who were paid an hourly wage. Plaintiffs, however, complain that they were not paid for all the hours that they worked and were not paid overtime for the hours that they worked over 40 hours per week. Id. at ¶¶ 25, 29, 43-45, 49-50, 57-59. Plaintiffs also allege that Defendants failed to comply with the Pennsylvania Department of Human Services ("DHS") regulations and/or the law governing secure care child residential facilities relative to the ratio of supervisors to children which, in turn, created an unsafe working environment. Id. at ¶¶ 25-30, 36-40. See id. at ¶¶ 6-9. Plaintiffs contend that when they complained to Defendants about the unsafe working conditions and the wage and overtime shortfalls, Defendants threatened Plaintiffs with demotions, loss of their free housing or termination. Id. at ¶¶ 45-47, 52-54.

Plaintiffs subsequently filed a grievance in accordance with the policy set forth in the employee handbook ("the Handbook") and were told "not to push the [uncompensated pay] issue." Id. at ¶¶ 52, 54. Consequently, on October 23, 2014, Brenda Martin resigned her position effective November 13, 2014, due to "Defendants' non-compliance with its own standard operations and procedures." Id. at ¶ 55. Shortly thereafter, on October 30, 2014, Defendants terminated Douglas Martin's employment which was effective November 13, 2014, as well. Id. at ¶ 56.

Plaintiffs filed the instant Complaint on April 7, 2015, bringing claims against Defendants under the FLSA for failure to pay minimum wages and overtime (Count I), and for retaliating against Douglas Martin (Count II). Plaintiffs have also brought state law claims for breach of contract (Count III); violations of the Pennsylvania Wage Payment and Collection Law

2

("WPCL"), 43 P.S. § 260.1, *et seq.*, and Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.* (Count IV); unjust enrichment (Count V); and violations of the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. §§ 1421-1428 (Count VI).

Defendants filed the instant partial Motion to Dismiss on June 8, 2015, arguing that Plaintiffs have failed to state a claim for breach of contract at Count III of the Complaint or a claim for violating the PWL at Count VI. ECF No. 6. On June 22, 2015, Plaintiffs filed a Response to the Motion and a Brief in Opposition to Defendants' Motion to Dismiss, ECF Nos. 11, 12, and on July 6, 2015, Defendants filed a Reply Brief. ECF No. 14. As such, Defendants' partial Motion to Dismiss is ripe for review.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III. DISCUSSION

### A. Claim for Breach of Contract (Count III)

Under Pennsylvania law, in order to prevail on a breach of contract claim, "a plaintiff must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Haywood v. Univ. of Pittsburgh, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013), *citing* Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

Here, Plaintiffs allege that an employment contract existed between them and Defendants by virtue of the Handbook that was provided to them upon their hire. The Handbook, which sets forth the terms of Plaintiffs' employment, includes a whistleblower provision which states that "there will be no retaliation, including but not limited to termination, compensation decreases, poor work assignments, or threats of any kind, toward an employee who whistleblows . . . ." ECF No. 7-1, p. 16. Plaintiffs contend that Defendants breached the whistleblower provision by threatening Plaintiffs with lesser work assignments and by terminating Douglas Martin after Plaintiffs complained about the alleged wage and overtime violations.

Defendants, however, argue that Plaintiffs' breach of contract claim should be dismissed because the Handbook contains a disclaimer that precludes a finding that the Handbook

4

constitutes a contract between Plaintiffs and Defendants. Defendants therefore contend that Plaintiffs were at-will employees who could be terminated at any time for any reason thereby precluding a claim for breach of contract.

It is undisputed that under Pennsylvania law there is a presumption that an employee is employed at-will and, "[a]bsent a statutory or contractual provision to the contrary," may be terminated at any time, "for any or no reason." Keefer v. Durkos, 371 F. Supp. 2d 686, 698 (W.D. Pa. 2005), *quoting* Geary v. U.S. Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (Pa. 1974). See Scully v. U.S. WATS, Inc., 238 F.3d 497, 505 (3d Cir. 2001). It is also undisputed that the Handbook at issue in this case includes a disclaimer which provides:

> The contents of this Employee Handbook summarize current George Junior Republic programs, policies and procedures and are intended as guidelines only. The employee should be aware that these policies and programs may be amended at any time, and that depending on the particular circumstances of a given situation, the organization's actions may vary from written policy. As such, the contents of the handbook do not constitute the terms of a contract of employment. Nothing contained in this handbook should be construed as a guarantee of continued employment, but rather employment with George Junior Republic is on an at-will basis. This means employment may be terminated at any time by either the employee or George Junior Republic for any reason not expressly prohibited by law.

ECF No. 7-1, p. 3.[1]

Plaintiffs do not dispute that they were at-will employees but argue that the Handbook nevertheless constitutes a unilateral contract independent of, or collateral to, their at-will status, and that Defendants therefore are bound by the policies set forth therein, including the whistleblower provision. In so arguing, Plaintiffs rely on Braun v. Wal-Mart Stores, Inc., 2011

---

[1] Defendants have provided the Court with a copy of the Handbook in conjunction with its Motion to Dismiss. ECF No. 7-1. In deciding a motion to dismiss, a court may consider any undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), *quoting* Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d. Cir 1997). Because Plaintiffs' claims are clearly based on the Handbook, the Court may consider it without converting the Motion to Dismiss to one for summary judgment.

Pa. Super. 121, 24 A.3d 875 (Pa. Super. Ct. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014) ("Braun"),

wherein the Superior Court of Pennsylvania quoted extensively from Caucci v. Prison Health

Servs., Inc.*,* 153 F. Supp. 2d 605 (E.D. Pa. 2001) ("Caucci"), stating that:

> "An employment handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook. . . .
>
> Notwithstanding this, provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required. Thus, the provisions comprising the unilateral contract may be viewed as a contract incidental or collateral to at-will employment. An employer who offers various rewards to employees who achieve a particular result or work a certain amount of overtime, for example, may be obligated to provide those awards to qualifying employees, although retaining the right to terminate them for any or no reason."

Braun, 24 A.3d at 941, *quoting* Caucci, 153 F. Supp. 2d at 611. Plaintiffs argue that because the

Court in Braun found that the employer's handbook in that case constituted a unilateral contract

despite the at-will disclaimer contained therein, the Handbook in this case constitutes a unilateral

contract as well notwithstanding the disclaimer set forth above. The Court disagrees.

First, in Braun, regardless of the disclaimer contained in the employee handbook, the

defendants conceded that the handbook contained *promises* of certain benefits including the

policies regarding rest and meal breaks which the plaintiffs claimed had been violated. Braun,

24 A.3d at 939, 944. Accordingly, the Court was able to conclude that the handbook constituted

a unilateral contract. Id. at 945. See id. at 941 ("[a] unilateral contract is a contract wherein one

party makes a *promissory* offer which calls for the other party to accept by rendering a performance") (emphasis added).

Second, notably absent from Plaintiff's recitation of the Braun Court's quote from Caucci, is the text following the first sentence which reads:

> The handbook must contain a clear indication that the employer intended to overcome the at-will presumption. The court may not presume that the employer intended to be bound legally by distributing the handbook nor that the employee believed that the handbook was a legally binding instrument. Generally, explicit disclaimers of contract formation in an employee handbook preclude a breach of contract claim.

Braun, 24 A.3d at 941, *quoting* Caucci, 153 F. Supp. 2d at 611 (citations and quotation marks omitted in *Braun*). In this case, unlike in Braun or Caucci, there is not just one, but two explicit disclaimers that speak directly to the policies set forth in the Handbook as well as the at-will presumption. In addition to the disclaimer cited by Defendants set forth above, the Handbook also has a provision that provides:

> **E. Employment Guidelines**
>
> This manual has been prepared to educate and guide employees regarding the personnel policies of George Junior Republic. The policies and procedures outlined in this manual do not constitute a contract with any employee nor are they a promise by George Junior Republic that the policies will be followed in every case. George Junior Republic may change the policies at any time and may choose not to apply a policy or policies in certain circumstances. Any oral statement or written agreement to the contrary not signed by the Chief Executive Officer or his designee is not valid and should not necessarily be believed to be true.

ECF No. 7-1, p. 8. This disclaimer, coupled with that cited by Defendants, go far beyond reiterating the applicability of the at-will doctrine or simply stating that the Handbook does not constitute a contract as was the case in Braun.[2] Rather, the instant disclaimers specifically

---

[2] The disclaimer in Braun simply stated that "the policies and benefits presented in this handbook are for your information only and so not constitute terms and conditions of employment . . . . This handbook is not a contract." Id. at 883.

disclaim that the policies contained in the Handbook are promises and explicitly state that Defendants may vary from the written policies and/or decline to apply them at all. Under these circumstances, the Court is hard pressed to find that the Handbook was a promissory offer or that Plaintiffs had any reasonable expectation that the Handbook constituted a unilateral contract that would bind Defendants to the policies set forth therein. See Braun, 24 A.3d at 941, *quoting* Caucci, 153 F. Supp. 2d at 661 ("[a]n employment handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to . . . be bound legally by its representations in the handbook").

Indeed, in Baron v. Quad Three Grp., Inc., 2013 WL 3822134 (Pa. Super. Ct. Jan. 22, 2013), the Pennsylvania Superior Court declined to find that an employee handbook created a unilateral contract where it contained a disclaimer similar to that at issue in this case. The disclaimer in Baron provided that:

> II. DISCLAIMER—PLEASE READ CAREFULLY
>
> The policies, procedures and benefits stated in this manual may be changed at any time at the sole discretion of Quad3. Quad3 reserves the right to modify this manual, amend or eliminate any of these policies, procedures or employee benefit programs at any time without advance notice to employees. This manual is not all inclusive, and is only a set of guidelines. Your employment relationship with Quad3 is considered to be "at will." At will employment means either you the employee or Quad3 have equal right to sever the employment relationship at will, with or without cause, or without notice.
>
> **These policies and guidelines are not intended and do not create a contractual relationship between Quad3 and any of its employees.**

Id., at *6-7 (emphasis in original). Applying the principles set forth in Braun and Caucci, the Baron Court found that it was evident from the disclaimer that the defendant "expressly disavowed any intent to contract with its employees pursuant to this employee handbook." Id. at *7. Because it is apparent from the disclaimers in this case, like that in Baron, that Defendants

8

expressly disavowed any intent to contract with Plaintiffs, no reasonable person could conclude that a contract existed or that Defendants otherwise intended to be bound by the provisions in the Handbook. See Braun, 24 A.3d at 943, *quoting* Martin v. Capital Cities Media, Inc., 354 Pa. Super. 199, 511 A.2d 830, 839 (Pa. Super. Ct. 1986) (citation omitted) ("it is the intention of the parties which is the ultimate guide. . . "). See also Engle v. Milton Hershey School, 2007 WL 1365916, at *8-9 (M.D. Pa. Jan. 19, 2007) (finding that the plaintiff's failed to state a breach of contract claim where the facts alleged failed to support a finding that the handbook included a promissory offer necessary for a unilateral contract). Cf. Randler v. Kountry Kraft Kitchens, 2012 WL 6561510, at *13 (M.D. Pa. Dec. 17, 2012) (finding no evidence of a unilateral contract where the handbook explicitly stated that the "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between Kountry Kraft and any of its employees," and the plaintiff acknowledged that "the information, policies, and benefits described here are necessarily subject to change"); McCloud v. United Parcel Service, Inc., 543 F. Supp. 2d 391, 403 (E.D. Pa. 2008), *aff'd* 328 F. App'x 777 (3d Cir. 2009) (finding that the plaintiff had no contractual rights based on the employee handbook in light of specific disclaimer that "[t]his particular code or policy handbook is not an expressed or implied contract of employment and does not create any contractual rights of any kind between UPS and its employees"). Therefore, Plaintiffs in the instant case have failed to state a claim for breach of contract and Count III of the Complaint is properly dismissed.

### B. Claim Brought Pursuant to the PWL (Count VI)

As recently stated by this Court:

> Under the Pennsylvania Whistleblower Law,

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, locations or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.
>
> 43 Pa. Cons. Stat. Ann. § 1423(a). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. Ann. § 1422. *See Golaschevsky v. Dep't of Environmental Protection,* 554 Pa. 157, 720 A.2d 757, 759 (Pa. 1998). "Good faith report," in turn, is defined as "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." *Id.*

DeForte v. Borough of Worthington, 2013 WL 6710355, at *7 (W.D. Pa. Dec. 18, 2013). See Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 595-96 (E.D. Pa. 2005).

Defendants argue that Plaintiffs' claim brought pursuant to the PWL should be dismissed because Plaintiffs have failed to allege the requisite wrongdoing by Defendants and because Plaintiffs' reports of wrongdoing were not made without consideration of personal benefit and thus were not made in good faith. Because it is clear from the allegations in the Complaint that Plaintiffs' reports of alleged wrongdoing were not made in good faith, Plaintiffs' PWL claim will be dismissed.

Although not dispositive of the issue, Plaintiff has not specifically alleged in the Complaint that the reports of alleged wrongdoing were made in good faith or without the consideration of personal benefit. More importantly, however, it is clear from what Plaintiffs have alleged in the Complaint that the contrary is true. Indeed, without exception, Plaintiffs' assertions in the Complaint relative to Defendants alleged wrongdoing speak only to *Plaintiffs'* responsibilities; *Plaintiffs'* schedule; the boys in *Plaintiffs'* care; the 5 hour breaks that *Plaintiffs*

10

were required to take without compensation; *Plaintiffs'* consequent inability to fulfill *Plaintiffs'* respective workday obligations; the impact that the increase in the number of boys at Defendants' facility had on *Plaintiffs*, *Plaintiffs' safety* and that of their minor son; the effect that Defendants' allegedly unfair policies had on *Plaintiffs*; and Defendants' refusal to pay *Plaintiffs* for the work that *Plaintiffs* performed. See ECF No. 1, ¶¶ 14, 18, 25-30, 33, 36-39, 42-43, 45, 48, 50, 52, 57-59. Although Plaintiffs presently argue in their Brief in Opposition to Defendants' Motion to Dismiss that their "complaint to the employer benefited all similarly situated GJR employees who were not paid their lawful wages," ECF No. 12, p. 8, Plaintiffs do not mention other employees anywhere in the Complaint. See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[i]t is well established that a plaintiff may not amend the Complaint through the brief filed in opposition to a motion to dismiss"). Moreover, regardless of whether Plaintiffs' reports of misconduct benefited other employees, it does not negate the fact that Plaintiffs reports were made for their own benefit as well as evidenced by the allegations in the Complaint. As such, Plaintiffs reports of alleged wrongdoing were not made in good faith as that term is defined under the statute. Plaintiffs therefore have failed to state a claim under the PWL and Count VI of the Complaint is properly dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' partial Motion to Dismiss will be granted. Accordingly, the following Order is entered:

### **ORDER**

AND NOW, this 16th day of September, 2015, upon consideration of Defendants' partial Motion to Dismiss, Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss and

Defendants' Reply Brief, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, ECF No. 6, is GRANTED and Counts III and VI of the Complaint are dismissed.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record Via CM-ECF