IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS A. MARTIN and <br> BRENDA L. MARTIN, <br>       Plaintiffs, <br><br> v. <br><br> GEORGE JUNIOR REPUBLIC IN PENNSYLVANIA and GEORGE JUNIOR REPUBLIC, <br>       Defendants. | Civil Action No. 2:15-cv-471 <br> Chief Magistrate Judge Maureen P. Kelly <br><br> Re: ECF No. 33 |

## MEMORANDUM AND ORDER OF COURT

Now pending before the Court is a Motion for Summary Judgment (the "Motion"), ECF No. 33, filed by Defendants, George Junior Republic in Pennsylvania ("GJR") and its parent company, George Junior Republic ("Parent"). The parties have thoroughly briefed the issues, ECF Nos. 34, 38, 40; developed their respective positions regarding the Concise Statements of Material Facts ("CSMF"), ECF Nos. 35, 39, 41; and submitted a Joint Stipulation of Undisputed Facts and numerous exhibits, ECF Nos. 36, 37, 39. The Motion is ripe for disposition.

### I.    FACTUAL AND PROCEDURAL HISTORY

This wage payment dispute arises from a unique employment arrangement. GJR operates a private, non-profit 24-hour residential treatment facility for more than 500 delinquent and dependent boys (ages 8-18). Its 500-acre campus is located in Grove City, Pennsylvania. GJR maintains approximately 30 open-living cottages for the youth, who live on campus during the school semester and often during the summer. The cottages are staffed by Counselor/Parents, who must be a husband and wife team. The Counselor/Parents live in separate quarters attached to a cottage and are principally responsible for supervising and implementing GJR's behavioral model with the youth assigned to that cottage when they are not at school or other activities.

Plaintiffs Douglas and Brenda Martin, husband and wife, were hired as Counselor/Parents on January 2, 2007. At that time, they signed an Equal Opportunity Family Living Agreement ("Employment Contract"). The Martins worked in a number of cottages during their employment. From March 2010 – June 2013, they lived in the Memorial cottage (a drug and alcohol unit) and reported to Campus Director Steve Gilliland ("Gilliland"). From June 2013 until the end of their employment in November 2014, the Martins lived in the Hammermill cottage and reported to Campus Director Brad Morgan ("Morgan").

Counselor/Parents are not directly monitored in their day-to-day work activities and interactions with the youths. They work pre-set schedules. For a drug and alcohol unit such as Memorial, they work five days on and two days off. For a regular cottage such as Hammermill, they work ten days on and four days off. A Relief Counselor/Parent is on duty during the off days.

The work day is scheduled for sixteen hours (6:00 a.m. to 10:00 p.m.). During each shift, each Counselor/Parent is expected to self-schedule five hours of uncompensated free time. An Evening Childcare Work ("Night Staff") is scheduled to be on duty for the other eight hours overnight. The first and last days of the schedule are shorter work days.

Counselor/Parents are classified as "non-exempt" for purposes of the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"). They are paid a "salary," based on a work week of 52 hours (40 hours of straight time and 12 hours at time-and-a-half).

On August 29, 2014, Brenda Martin sent a detailed email to numerous executives of GJR in accordance with the grievance policy in the Employee Handbook, complaining of several issues including the alleged failure to pay for the actual amount of overtime worked. On

September 3, 2014, the Martins met with Chief Operating Officer ("COO") Jeff Morris ("Morris"), Vice President of Human Resources Thomas Jones ("Jones"), and Brad Morgan to discuss their letter. During this meeting, Morris allegedly slammed his hand down and yelled at Brenda Martin. Douglas Martin Dep. at 307. As to the overtime issue, the Martins were told that all of the Counselor/Parents could be taken out of their jobs and made shift workers with no on-site housing. Id. at 308, 338.

Approximately one or two weeks later, in mid-September, the Martins met with Chief Executive Officer ("CEO") Richard Losasso ("Losasso") to discuss the grievances. In this meeting, Losasso allegedly told the Martins not to push the uncompensated pay issue. Id. at 339.

On October 23, 2014, Brenda Martin met with Jones, and submitted notice of her resignation effective November 13, 2014. She asked Jones if he would consider Douglas Martin for continued employment as a Relief Counselor. Jones was interested and checked with Losasso, who voiced no objection.

At some unspecified date, the Martins met with Jones and Chief Financial Officer Michelle Gerwick ("Gerwick") to discuss why they had not received a raise. Jones testified that he felt that Douglas was hostile, belligerent and disrespectful during the meeting. Douglas denies this, and testified that they just did not understand Gerwick's explanation of the numbers. As they were walking alone down the hallway past Jones' office after the meeting, Douglas said to Brenda in a normal voice that "they could make the numbers do whatever they want them to do." Douglas Martin Dep. at 312-315; Jones Dep. at 144.

On October 30, 2014, Douglas Martin met with Jones to discuss the Relief position, but Jones informed Martin that his employment would be terminated effective November 13, 2014, due to his disenchantment with GJR.

Plaintiffs filed a six-count Complaint, asserting the following counts: (1) failure to pay overtime and/or minimum wage under the FLSA; (2) retaliation against Douglas Martin; (3) breach of contract; (4) violation of the PWCA and Pennsylvania Minimum Wage Act; (5) unjust enrichment; and (6) violation of the Pennsylvania Whistleblower Law. ECF No. 1. In an Opinion and Order dated September 16, 2015, the Court dismissed counts 3 and 6. ECF No. 17. In the pending motion, Defendants seek dismissal of the Complaint with prejudice. However, Defendants' legal arguments have addressed only the FLSA overtime and retaliation claims.

## II. STANDARD OF REVIEW

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48. See, e.g., Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Rather, a dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. 249.

## III. LEGAL ANALYSIS

Defendants contend that summary judgment is appropriate for three reasons. First, they contend that they did not "suffer or permit" the Martins to work overtime. Defendants argue that they clearly instructed the Martins to schedule five hours off each day and had no reason to know that the Martins were unable to do so. Second, Defendants contend that they did not retaliate against Douglas Martin. Instead, they decided not to hire him as a Relief Counselor because he had become disenchanted with GJR. Finally, Defendants contend that all claims against George Junior Republic, the Parent company, should be dismissed because the Martins' only employer was GJR, the subsidiary. The Court will address these contentions seriatim.

### A. Overtime Pay

The parties essentially agree on the legal principals which govern FLSA overtime claims. An employer may not employ a non-exempt employee for a workweek longer than forty hours unless the employee receives overtime compensation at a rate not less than one and a half times his regular rate. 29 U.S.C. § 207(a)(1). The term "employ" encompasses both an employer's actual and constructive knowledge. Thus, employees may prevail on an FLSA claim for unpaid overtime by proving that they "were suffered or permitted to work without compensation." Stanislaw v. Erie Indem. Co., 2012 WL 517332, at *3 (W.D. Pa. Feb. 15, 2012) (quoting Allen v. Board of Public Education for Bibb County, 495 F.3d 1306, 1314 (11th Cir. 2007)). An FLSA

plaintiff must demonstrate that "(1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." Id.

There is no violation of the FLSA if the employee performs uncompensated work but deliberately prevents his or her employer from learning of it. On the other hand, an employer cannot stand idly by and allow an employee to perform overtime work, even if the employee does not make a claim for the overtime compensation. Constructive knowledge can be imputed to the employer when "it has reason to believe that its employee is working beyond his shift." 29 C.F.R. § 785.11. If "an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." Id.

Defendants point to the Employment Contract, which clearly provides that Counselor/Parents are required to self-schedule five hours of uncompensated free time during each shift and to obtain prior approval before working overtime. The preprinted, pre-populated scheduling forms had check-boxes to identify schedule deviations and areas to explain why an employee had been unable to get time off. Defendants point out that the Martins worked without close supervision; never submitted paperwork to claim overtime, even after being instructed to do so; and were actually paid overtime whenever GJR did know that they had worked beyond their regular schedule. For example, Brenda Martin was paid additional overtime during Douglas Martin's hospitalizations, and the Martins were paid when they were in training, assisted on the "ropes course" or worked in the human resources office.

Plaintiffs testified that the written policies did not reflect how their work was actually performed. They contend that Defendants actively discouraged them from accurately reporting their overtime. The Martins testified that they were told during their initial training that both parents had to be present in the unit whenever boys were in the unit. Brenda Martin Dep. at 118.

6

In Plaintiffs' view, Defendants had to know that Counselor/Parents would be unable to take all of their free time because the boys required constant supervision and no relief was provided during their shift hours. Douglas Martin explained that in addition to being unable to take five hours off during the shift, GJR required them to have a conference with the incoming relief worker each day. Such conferences lasted 5-20 minutes and sometimes the relief workers were not on time, such that they usually did not get off-duty until 10:15 p.m. Douglas Martin Dep. at 113.

Plaintiffs testified that they had been instructed by Gilliland that they were not allowed to write anything on the pre-printed schedule forms except their signatures. In particular, they were not permitted to fill out the sections of the form to claim non-scheduled overtime hours. Once, Brenda kept track of her actual hours on an Excel spreadsheet but Gilliland refused to accept them. Brenda Martin Dep. at 210-211; Douglas Martin Dep. at 299-301. Moreover, the pre-printed schedules were not regularly collected and were not utilized by the payroll personnel who sent out the paychecks. Thus, a jury could conclude that there was not a viable mechanism to report overtime worked.

Brenda had discussions about not getting paid for overtime with various GJR administrators, including Gilliland, Morgan, Jones, Morris and Morgan, and a consultant named Jen Mertz. Brenda Martin Dep. at 269-270. The Martins testified that CEO Losasso discouraged them from pursuing their claims for overtime by stating: "We don't want to push that issue." Douglas Martin Dep. at 339. Indeed, they perceived that if the administration deemed their overtime claims to be excessive, they might be removed from their jobs. Id. at 319.

There are genuine disputes of material fact which prevent resolution of this claim at the summary judgment stage. Although there is certainly evidence from which a jury could find in favor of Defendants, the record must be viewed in the light most favorable to Plaintiffs at this

7

stage of the case. In sum, a reasonable jury could conclude that Defendants had actual and/or constructive knowledge of overtime worked but squelched truthful reports of those overtime hours.[1]

### B. Retaliation

As an initial matter, it is important to clarify the contours of this claim. As the Court understands it, Plaintiffs are <u>not</u> contesting the removal of Douglas Martin from his Counselor/Parent position after Brenda Martin resigned. In other words, Plaintiffs are not challenging the requirement that the full-time Counselor/Parent positions be staffed by married couples. Instead, Plaintiffs contest only the decision to not hire Douglas Martin for a Relief Counselor position.

A cause of action for retaliation under the FLSA, 29 U.S.C. § 215(a)(3), requires Plaintiffs to prove: (1) protected activity; (2) an adverse employment action; and (3) a causal connection, which may be established by circumstantial evidence such as temporal proximity, a pattern of antagonism after the protected conduct and the record as a whole. <u>Kachmar v. SunGard Data Systems, Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997). The ultimate question is whether Defendants had an intent to retaliate. <u>Moore v. City of Phila.</u>, 461 F.3d 331, 342 (3d Cir. 2006). The familiar <u>McDonnell-Douglas</u> burden-shifting framework applies. If Plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate reason for its action. When the employer does so, the burden shifts back to Plaintiff to show that the stated reason is a pretext for retaliation.

Defendants concede that Plaintiffs have met the first two prongs of the prima facie case, but contest causation. Plaintiffs have introduced evidence of a pattern of antagonism following

---

[1] In light of the remedial nature of the FLSA, if the evidentiary record regarding the amount of overtime actually worked is incomplete, the court may award approximate damages to the employee. <u>Allen</u>, 495 F.3d at 1315-16.

8

the protected activity, i.e., their grievance regarding unpaid overtime on August 29, 2014, from the highest executives in the company. To wit, the Martins were summoned to a meeting in early September with numerous GJR administrators, at which COO Morris basically yelled at them. The Martins were allegedly told in that meeting that the overtime issue could be solved by making all of the Counselor/Parents into shift workers without on-site housing. In mid-September, CEO Losasso told the Martins "not to push" the uncompensated overtime issue. The decision to not re-hire Martin occurred less than two months later. In the interim, Defendants rejected all of the issues raised in the Martins' grievance and Brenda Martin submitted her resignation. Plaintiffs have cast doubt on Defendants' stated reason for the discharge, namely that Jones did not hire Douglas Martin for a Relief position because Jones believed him to be "disenchanted." A reasonable jury could conclude that any "disenchantment" was based on the overtime pay grievance and negative response thereto rather than any comments Martin made during and after a meeting with Michelle Gerwick regarding certain raises. Therefore, the motion for summary judgment must be denied as to the retaliation claim.

  **C. Whether the Parent Company is a Joint Employer**

Finally, Defendants seek dismissal of all claims against George Junior Republic, the Parent company. The FLSA has adopted an expansive definition for the term "employer." In <u>In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.</u>, 683 F.3d 462, 469 (3d Cir. 2012), the United States Court of Appeals for the Third Circuit outlined the following test:

> When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee

9

records, such as payroll, insurance, or taxes. As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment.

In this case, the original Equal Opportunity Family Living Agreement (the "Employment Contract") was executed between "George Junior Republic" and the Martins. See Exhibit D. There is no reference in this document to the subsidiary, "George Junior Republic of Pennsylvania." Similarly, the Employee Handbook is issued by "George Junior Republic." See Exhibit G. In this document, the term "George Junior Republic" refers to the Parent company as the employer. See Exhibit G, Introduction (Handbook "applies to all employees of George Junior Republic including George Junior Republic in Pennsylvania, George Junior Republic in Indiana and Preventative Aftercare.") One subsection of the Handbook specifically refers to "benefits provided by George Junior Republic in Pennsylvania." See Exhibit G, § III at p. 13. In other words, Defendants obviously knew how to refer to the different corporate identities. But they failed to structure the employment relationship such that the Martins were employed solely by the subsidiary. Accordingly, the claims against George Junior Republic, the Parent company, will not be dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment, ECF No. 33, is denied. An appropriate Order follows.

BY THE COURT,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS A. MARTIN and ) | |
| BRENDA L. MARTIN, ) | |
| Plaintiffs, ) | Civil Action No. 2:15-cv-471 |
| ) | Chief Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | |
| GEORGE JUNIOR REPUBLIC IN ) | Re: ECF No. 33 |
| PENNSYLVANIA and GEORGE ) | |
| JUNIOR REPUBLIC, ) | |
| Defendants. ) | |

## ORDER OF COURT

AND NOW, this 10th day of November 2016, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Defendants' MOTION FOR SUMMARY JUDGMENT, ECF No. 33, is **DENIED**.

BY THE COURT:

/s Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

**cc:** **All counsel of record**
Via CM/ECF